UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JEFFREY WILLIAMS,

      Petitioner,                          Case No. 2:14-cv-51

v.                                     HON. R. ALLAN EDGAR

DUNCAN MACLAREN,

      Respondent.

_____/

## MEMORANDUM AND ORDER

Petitioner Jeffrey Williams, filed this petition for writ of habeas corpus challenging his conviction for first degree home invasion and larceny from a person following Petitioner's guilty plea.  Petitioner was sentenced to one hundred and twenty months to two hundred and forty months for the home invasion and to sixty months to one hundred and twenty months for larceny from a person.  Petitioner appealed his convictions.  The Michigan Court of Appeals rejected Plaintiff's claims for lack of merit in an unreasoned order.  PageID.295, ECF No. 9-5.  The Michigan Supreme Court considered and declined to grant Petitioner's application for leave to appeal the appellate court's order because it was "not persuaded that the questions presented should be reviewed by this Court."  PageID351, ECF No. 9-11.

Petitioner alleges that:

I.  Petitioner was denied his right to paid counsel of his own choice during the preliminary examination proceedings and at sentencing.

II.   Petitioner's trial counsel did not meet with him before the preliminary exam, failed to conduct any discovery, and induced Petitioner to accept the prosecution's plea offer.

III.   Petitioner's guilty plea was involuntary, violated due process, and was the product of ineffective assistance of counsel.

IV.   Michigan's procedure allowing appointed counsel to withdraw by leave from a guilty-plea appeal violated due process and equal protection.

V.   Appellate counsel was ineffective by not finding any non-frivolous issues to file on appeal and seeking to withdraw.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*,

2

529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of

3

correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that he was denied his right to paid counsel of his own choice during the preliminary examination proceedings and at sentencing.  Petitioner asserts that his trial counsel did not meet with him before the preliminary exam, failed to conduct any discovery, and induced Petitioner to accept the prosecution's plea offer.  Petitioner claims that his guilty plea was involuntary, violated due process, and was the product of ineffective assistance of counsel.

During the first day of his preliminary examination in early August 2009, Petitioner, without voicing objections, was represented by appointed counsel's partner.  PageID.275, ECF No. 9-2.  The prosecutor presented terms of a plea agreement: In exchange for a guilty plea on two counts of first-degree home invasion, the prosecution would dismiss charges of unarmed robbery, fourth habitual offender, and gun law violations.  PageID.275-276, ECF No. 9-2.  After a continuance of the preliminary examination to secure a witness on a material witness warrant, the preliminary examination continued in late August 2009.  PageID.275, 278, ECF 9-2.  At that time, the prosecution made a modified plea offer: In exchange for his guilty plea on first-degree home invasion and larceny from a person, the prosecution would dismiss one count of first-degree home invasion, not bring a felony firearm charge, or charge Petitioner as a habitual offender.  PageID.281, 284, 285, ECF No. 9-3.  In the course of discussing the plea agreement in court, the prosecution indicated that Petitioner could potentially cut his prison time in less than half if he accepted the plea offer instead of being convicted at trial on all the charged counts.  PageID.281, 282, ECF No. 9-3.

During the hearing, Petitioner requested new counsel and requested to retain his own counsel:

4

THE DEFENDANT:  Sir, I'd like to say, um, I've been incarcerated a whole month and this is my first time seeing my lawyer.  At this time I'd like to um, dismiss him as my counsel.  My family wants to get me a paid attorney and I'd rather go with a paid attorney.  Right now, I feel like I'm being rail-roaded.

THE COURT: Well, there's a couple of issues.  If you don't want Mr. Watkins to represent you, that's I guess up to you to a certain degree.  If he's Court appointed, then you don't have a whole lot of say in who get's appointed to you.  I've known Mr. Watkins for over a decade.  When I was a prosecutor, he and I had cases together and I know that he's - - he's entirely competent and one of the most respected attorney's around.

THE DEFENDANT: I mean - -

THE COURT: So unless you have a real good reason why you don't want Mr. Watkins, you're going to have to live with him.  The second thing is, is that if you don't want to waive or enter a plea today, that's fine, I don't care what you do but I'm here; the witness that we had to get a material witness warrant on is here.  They've got their tapes and whatever else they have.   So if you don't want to plead today, that's fine, but we're are going to finish the prelim today - -.

PageID.281, ECF No. 9-3.

Petitioner was provided with an Advice of Rights form and the Court began to discuss the rights that Petitioner would give up if he entered a guilty plea.  Petitioner thought that he could adjourn the preliminary examination hearing and believed that his counsel was not ready to put forth a defense during the preliminary examination.  Petitioner's counsel attempted to explain to Petitioner that they were not required to "put on a defense at a preliminary exam." PageID.283, ECF No. 9-3.

The Court explained:

You've had plenty of time to hire a new attorney, if that's what you wanted to do.  You know, you're here; she's here.  If you want, we can run the prelim and see what happens.  It might get bound over on one charge.  It may get bound over on no charges.  It may get bound over on all the charges.  And then if you feel like you need to get a new attorney up at the circuit court, you're welcome to do that but we're not delaying this any longer that it had to  - - this proceeding.    After

you're out of my Court, I don't care what you do.  But we're either having your prelim today, or we're - -you're entering a plea today.  It doesn't matter to me which one you do, but they're not willing to waive it - - and I'm not willing to adjourn it.  So you've either got to finish running it, which you started anyway, so if you want to finish it, we can finish it.  Again, that doesn't matter to me.  The only thing you've got to consider is that if you do that and it gets bound over, chances are you may never get a plea offer and that's what you're kind of risking.  So like I said, it doesn't make a difference to me, but we just need to know one way or another. . . .

PageID.283, ECF No. 9-3.

Petitioner accepted the plea agreement and agreed to plead guilty to first degree home invasion and to larceny from a person.  Petitioner was told by the court that the plea offer included the prosecution's "sentence recommendation" that Petitioner serve his sentences concurrently and that, if the sentencing judge did not follow this recommendation, Petitioner could withdraw his plea. PageID.284, ECF No. 9-3.  Petitioner was aware that a specific sentencing range was not part of the plea agreement.  PageID.285, ECF No. 9-3.  Petitioner admitted that he unlawfully entered a residence, assaulted a victim, and stole the victim's cell phone in July 2009.  PageID.285, ECF No. 9-3.  Prior to sentencing, Petitioner's March 2011 brief accompanying his motion to withdraw his guilty plea argued that, due to his confusion over the sentencing range, his guilty plea was not understanding or voluntary.  The sentencing judge denied that motion.  PageID.84-92, ECF No. 4-1.

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969).  Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause.  A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea.  *See Brady v. United States*, 397 U.S. 742, 748 (1970).  In general, a defendant is aware of the

direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed.  *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992).  In the present case, after a thorough interrogation of Petitioner, the state judge found that petitioner's plea of guilty was entered knowingly and voluntarily.

At his plea hearing, Petitioner indicated that he understood the rights that he was giving-up as a result of his guilty plea, and that he understood the potential sentence range that he could receive.  Further,  Petitioner entered into a favorable plea deal where the prosecutor agreed to dismiss one count of home invasion, and the unarmed robbery charge.  The prosecutor agreed not to charge Petitioner with felony firearm and to dismiss the supplemental habitual offender charge in exchange for a plea to one count of home invasion and one count of larceny from a person.  The prosecutor agreed to recommend that the sentences on each of the charges run concurrently.  As a result, Petitioner limited his exposure to a much more significant minimum and maximum term of imprisonment.   The record establishes that Petitioner entered into a voluntary and knowing plea.

A valid guilty plea extinguishes claims that arose prior to the plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Refining these "standards" for attacking a guilty plea in a subsequent opinion, the Court held:

> [T]he two-part *Strickland v. Washington* [466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, *supra*, and *McMann v. Richardson*, *supra*.  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Petitioner has failed to show that he received advice from counsel that was ineffective.  Petitioner claimed that counsel was not prepared to present a defense at the preliminary examination.  As counsel explained, Petitioner was not required to present a defense, the issue was whether the prosecutor had evidence to establish probable cause for the charges.[1]

---

[1]Petitioner was not denied the right to retain his own attorney.  Petitioner never exercised that right prior to entering his plea.  Further, there is nothing within the record that could support Petitioner's claim that his counsel induced him to accept a plea.  In fact, the record shows that Petitioner received effective assistance of counsel and that Petitioner benefitted from the plea deal

(continued...)

At sentencing in April 2011, Petitioner's new counsel raised the sentencing guideline issue again, but the sentencing judge found that, since there was no *Killebrew* agreement, Petitioner was not entitled to withdraw his plea because the minimum range of 81 to 135 months the prosecution mentioned during the preliminary examination was off by less than 10% from the accurate range. PageID.292, ECF No. 9-4.  The judge noted: "[N]one of this is going to change the sentence that I would impose because my sentence is going to be well within the guidelines range, no matter which guideline range you use." *Id.*

Taking account of the fact that Petitioner, having been released on bond, "disappeared" and did not show up for his scheduled sentencing hearing, the judge sentenced Petitioner to one hundred and twenty to two hundred and forty months on the home invasion charge and to sixty to one hundred and twenty months of the larceny charge, to be served concurrently.  PageID.293-294, ECF No. 9-4.  At sentencing the Judge set forth his reasons to support Petitioner's sentence:

> Well, I have two fundamental problems in this case.  The first problem is that regardless of the circumstances and whether it was a misunderstanding or not, the idea that you would have a firearm around your two-year-old son is just unfathomable to me.
>
> The second that has always bothered me about this case is that at the time of your plea hearing, Judge Cortes talked to you and the issue of bond came up and they released you on bond and you disappeared and I don't know what other conclusion to draw from that, other than the fact that you decided that you really don't care what sentence you get as long as you didn't get caught in the first place.   Because I'll tell you, everybody that knows anything about me knows that I am very tough on people who don't show up for their sentencing hearing because when we release people on bond, we're releasing them with the Court's trust that they'll come in.  And so, every time somebody doesn't show up for sentencing, the sentence goes way up with me.

---

[1](...continued)
that he made with the prosecutor.

In addition to that, as I'm sure you know, you have an enormous number of prior convictions. You only have three felonies, but you have 21 prior misdemeanors and so, you know better than this. I mean, you're 32 years only and you really have been in a heck of a lot of trouble in that time.

PageID.293, ECF No. 9-4.

Petitioner was represented by counsel during his preliminary examination. Petitioner accepted a plea deal that, but for his pre-sentencing absconding, would have significantly reduced his prison time. Petitioner made all the required admissions concerning the intelligent and voluntary nature of his guilty plea as well as concerning his criminal conduct during his plea colloquy with the trial judge. Petitioner also understood that, while the concurrent sentencing was part of the deal, the sentencing scoring and range was not part of his plea bargain. Petitioner took "full responsibility for [his] actions" during sentencing (PageID.293, ECF No. 9-4). The sentencing judge honored the concurrent sentencing agreement on the two counts to which Petitioner had pled guilty. Petitioner has failed to show a violation of his constitutional rights during the plea proceeding and during sentencing. The Michigan court decisions did not result in any decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In his final two claims, Petitioner raises the post-plea issue of representation during his appeal by leave, claiming that Michigan's procedure allowing appointed counsel to withdraw by leave from a guilty-plea appeal violated due process and equal protection, and that his appointed appellate counsel was ineffective for failing to find any non-frivolous issues and seeking to withdraw from Petitioner's appeal. The Michigan Court of Appeals rejected these claims as well for lack of merit in an unreasoned order. PageID.295, ECF No. 9-5. The Michigan Supreme Court considered

and declined to grant Petitioner's application for leave to appeal the lower court's order because it was "not persuaded that the questions presented should be reviewed by this Court." PageID.351, ECF No. 9-11.

At the end of Petitioner's sentencing hearing, the sentencing judge instructed Petitioner that, while he did not have an automatic right to appeal, he could still appeal this decision to the Michigan Court of Appeals by leave. The judge also instructed Petitioner concerning the timeliness of such an appeal and directed him to his attorney at the time to discuss the matter. Finally, he also informed Petitioner that the court would appoint an attorney for him if he could not afford one. PageID.294, ECF No. 9-4. Petitioner was appointed appellate counsel. The appointed attorney, after reviewing the record, stated that he was not aware of any appealable errors and asked the trial court to have his appointment withdrawn. The trial court granted this motion and declined to appoint a substitute attorney for Petitioner. PageID.111, ECF No. 4-1.

In the context of an attorney's alleged failure to file an appeal, the Supreme Court has indicated that the *Strickland* standard continues to apply. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In reviewing such a claim, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). Regarding the first *Strickland*-prong in an appellate context, the Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). To satisfy the prejudice-prong of *Strickland* in the appeals process, the Supreme Court has held that a defendant "must show a reasonable probability that, but for his counsel's unreasonable failure [to raise Petitioner's issues], he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

11

Petitioner has failed to demonstrate that any of the issues he raised on appeal have merit.  Therefore, he cannot accuse his appointed appellate counsel of ineffectiveness of counsel. Petitioner cannot show that his constitutional rights were violated by the appeal process or due to ineffective assistance of appellate counsel.  The Michigan court decisions did not result in any decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the Petition is dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could

not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the court

will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:   <u>    6/7/2016                    </u>        <u>    /s/ R. Allan Edgar                            </u>
                                                        R. ALLAN EDGAR
                                                        UNITED STATES DISTRICT JUDGE